UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARLENE CARR-ASKEW | ) | CASE NO. 1:14CV2076 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Darlene Carr-Askew Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in her August 9, 2013 decision in finding that Plaintiff was not disabled because she had the residual functional capacity (RFC) to perform light work that exists in a significant number of jobs in the national economy (Tr. 217-230). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

**I.  PROCEDURAL HISTORY**

Plaintiff filed her application for DIB and SSI on March 7, 2012, alleging she became disabled on October 30, 2010. Plaintiff's application was denied initially and on reconsideration (Tr. 382-392). Thereafter, Plaintiff requested a hearing before an ALJ, and on June 6, 2013, a hearing was held

1

where Plaintiff appeared with counsel and testified before an ALJ, along with Deborah Lee, a vocational expert (Tr. 359, 361, 365, 376).

On August 9, 2013, the ALJ issued her decision, finding Plaintiff not to be disabled (Tr. 217-230). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-5, 212-236). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Sections 405(g) and 1383(c)(3).

## II.    STATEMENT OF FACTS

Plaintiff was born on November 30, 1962, was forty-eight years old as of her alleged disability onset date, and was fifty years old as of her hearing date (Tr. 389, 462). Plaintiff is a high school graduate, and worked as a temporary worker in a number of places as a mail sorter, injection mold machine tender, mental retardation aide, teacher aide II, and as a general inspector (Tr. 260-262, 446).

## III.   SUMMARY OF MEDICAL EVIDENCE

Plaintiff began mental health services at The Free Clinic on March 15, 2012 (Tr. 621). She reported symptoms of depression and distress related to her hepatitis and thyroid condition (Tr. 621). She also reported that she was charged with robbery in 2011, and had been released from prison earlier that month after spending fifty days in jail (Tr. 621). She did not report any previous mental health counseling or medication (Tr. 621). Her mental status examination showed that she was cooperative without suicidal or homicidal ideations (Tr. 629). Plaintiff had a logical thought process (Tr. 629). She was depressed, but remained insightful (Tr. 630). She was diagnosed with major depressive disorder and generalized anxiety disorder (Tr. 631). As of May 16, 2012, Plaintiff was not

taking any anti-depressant medication (Tr. 760).

On May 31, 2012, Plaintiff appeared before Richard Halas, M.A. for a psychological consultative examination related to her complaints of depression and anxiety. Plaintiff reported that she graduated from high school with above average grades (Tr. 635). She stated that she was arrested at the age of nineteen for receiving stolen property (Tr. 636). Plaintiff attended Dyke Cooley College for half a year, but stopped attending due to family issues (Tr. 635). Plaintiff reported a history of hepatitis C for about twenty years, which she said affected her energy level (Tr. 636). She described one psychiatric hospitalization, twelve years earlier, for a nervous breakdown (Tr. 636). Plaintiff was casually dressed, and presented herself in a reasonably neat and well-kempt manner (Tr. 636). She had a flat, hesitant, and tentative presentation (Tr. 637). She gave short and goal-oriented responses (Tr. 637). Her responses demonstrated good coherency and relevancy (Tr. 637). She had good eye contact (Tr. 637). Plaintiff described some difficulties with sleep (Tr. 637). She also reported experiencing crying spells and feelings of hopelessness, helplessness, and worthlessness (Tr. 637). Plaintiff denied thoughts of hurting herself or others (Tr. 637). Dr. Halas observed some signs of anxiety during the examination, such as fidgeting (Tr. 637). Dr. Halas noted that Plaintiff's overall presentation was assessed as within normal limits (Tr. 637). She did not show any specific symptoms or characteristics that would be consistent with a thought disorder or psychotic disorder (Tr. 637). She had no hallucinations or delusions, and she had good contact with reality (Tr. 637). Plaintiff demonstrated good memory for past events and good short-term memory (Tr. 638). She recalled three out of three items after five minutes (Tr. 638). Plaintiff could perform simple calculations and serial 7's (Tr. 638). She was able to concentrate and recall seven digits forward (Tr. 638). Dr. Halas assessed Plaintiff's level of insight and judgment as good (Tr. 638). Regarding activities of daily living, Plaintiff reported that she and her husband shared the household chores, including cooking,

cleaning, shopping, and laundry (Tr. 638). She attended church (Tr. 638). Dr. Halas diagnosed Plaintiff with major depression, recurrent type and anxiety disorder, not otherwise specified (Tr. 639). Dr. Halas opined that Plaintiff did not have deficits in understanding, remembering, and carrying out instructions; little to no difficulties in maintaining attention and concentration and maintaining persistence and pace; significant problems in responding appropriately to supervision and coworkers; and some problems responding appropriately to work pressures (Tr. 639).

In August 2012, Plaintiff had a mental health assessment performed at MetroHealth Medical Center for depression and anxiety (Tr. 716-721). During the examination, Plaintiff had a depressed mood and was anxious, but was oriented and cooperative (Tr. 720). Her speech was clear, and she had a logical thought process free of any abnormal ideations (Tr. 720). Her insight and judgement were good, and she had good recent and remote memory (Tr. 720). She also had sustained attention and concentration (Tr. 720).

On September 21, 2012, Plaintiff commenced antiviral therapy for her hepatitis C (Tr. 779). Plaintiff had some significant side effects from therapy, including fatigue, malaise, dizziness, and headaches (Tr. 779. 787, 795, 812, 909). Doctors advised her not to start Seroquel, an antidepressant medication, or any other psychotropic medication for depression during the antiviral treatment (Tr. 775). In February 2013, Plaintiff was prescribed Remeron to address her mood, appetite, and sleep (Tr. 885).

In March 2013, Plaintiff reported feeling better during a pharmacologic management appointment (Tr. 901). Plaintiff reported that her appetite had increased (Tr. 901). She described some sedation from the Remeron, but said that she could tolerate the extra sleep (Tr. 901). She was optimistic and eager to return to her normal activities (Tr. 901). She complained of some racing thoughts, but she was less depressed and had a full range of affect (Tr. 901). She had sustained

4

attention and concentration, and her memory was within normal limits (Tr. 901).

In April 2013, Plaintiff completed her antiviral treatment (Tr. 909). She did not report fatigue, nausea, or weakness (Tr. 909). She reported continued improvement in sleep and appetite with medication (Tr. 909). She also denied depression (Tr. 909).

That same month, Carol Cordello, a nurse she saw once per month, and Toni Johnson, M.D., a physician she only saw once (Tr. 258), completed a check-box questionnaire rating Plaintiff's mental limitations to perform work-related tasks (Tr. 928-929). They opined that Plaintiff could rarely deal with the public or stress, and only occasionally maintain attention and concentration, respond appropriately to changes, work in coordination with others, complete a normal workday and workweek, socialize, relate in an emotionally stable manner, and relate predictably in social situations (Tr. 928-929).

On May 30, 2013, Plaintiff had a relapse in her mood when she stopped taking her medication for a few days, but she overall recognized that her medication had been helpful (Tr. 931). On that same day, her mental status examination results were normal (Tr. 931). She was cooperative and oriented with normal speech, thought content, and affect (Tr. 931). She had sustained concentration, and her memory was within normal thoughts (Tr. 931). She was advised to resume her medication and obtain clearance to restart Seroquel after her antivirals lost their effect (Tr. 932).

### IV.    SUMMARY OF TESTIMONY

Plaintiff testified that she was a high school graduate and had taken a semester of college classes in business administration (Tr. 241). She also stated that she had previously completed nursing assistant training (Tr. 241). Plaintiff said that she last worked in September 2012 for a temporary work agency (Tr. 242, 243-244). She testified that she stopped working because she had

5

just started treatment for her hepatitis and felt too weak (Tr. 242). She also explained that the number of hours she worked per day was subject to how much work was available for any particular assignment (Tr. 245). Plaintiff alleged that her depression caused her mind to race and made her cry (Tr. 259). She did not describe any difficulties interacting with others. Plaintiff completed a questionnaire about her function, and noted that she got along with others, including authority figures, and that she had never been fired from a job because of difficulty getting along with other people (Tr. 441).

Thereafter, the ALJ asked the vocational expert to assume an individual with Plaintiff's age, education, and past work experience, who was also limited to fast-paced work demands and no more than superficial interaction, but the ability to work in a low stress environment where changes could be anticipated and easily explained (Tr. 262-263). The vocational expert stated that such a person would be able to work as a cleaner, mail clerk, or cafeteria attendant (Tr. 262-264).

## V.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits and supplemental security income. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational

6

     factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## **VI.**  **STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social*

*Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## VII. ANALYSIS

Plaintiff asserts one assignment of error:

A. THE ALJ FAILED TO PROPERLY EVALUATE AND ASSIGN APPROPRIATE WEIGHT TO THE OPINIONS OF PLAINTIFF'S TREATING PSYCHIATRIST AND SOCIAL SECURITY'S CONSULTATIVE EXAMINER WHEN DETERMINING PLAINTIFF'S MENTAL RESIDUAL FUNCTIONAL CAPACITY, THEREFORE, THE DETERMINATION THAT SHE IS NOT DISABLED IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND MUST BE REVERSED OR REMANDED.

The ALJ correctly evaluated the medical opinions in assessing Plaintiff's RFC at Step Two. The ALJ found that Plaintiff's depression and anxiety disorder were severe impairments because they limited her ability to perform basic work activities (Tr. 218). After determining that Plaintiff's impairments did not satisfy a Listing, the ALJ assessed Plaintiff's residual functional capacity (RFC), which is the most she could do despite her limitations (Tr. 218-220).

Thereafter, the ALJ correctly found that Plaintiff could work in a low-stress environment without fast-paced demands, and where changes could be anticipated and easily explained (Tr. 220). The ALJ also determined that Plaintiff had the ability to interact superficially (Tr. 220).

The ALJ's finding is supported by the opinion of Aracelis Rivera, Psy.D., who reviewed Plaintiff's medical record on behalf of the state agency (Tr. 227). In June 2012, Dr. Rivera opined that

Plaintiff could function in a setting with no fast paced demands, superficial interaction, and low stress, where change could be anticipated and easily explained (Tr. 275-276). Leslie Rudy, Ph.D. affirmed this opinion in September 2012 (Tr. 304-305). The undersigned concludes that the opinions of Drs. Rivera and Rudy are substantial evidence in support of the ALJ's RFC finding.

Plaintiff contends that the ALJ's RFC finding is in error because she did not give sufficient weight to the opinion of her treating physician, Dr. Johnson, who opined that Plaintiff would have several significant workplace limitations (Pl.'s Br. 14, citing Tr. 928-929). Dr. Johnson noted that Plaintiff could rarely deal with the public or stress, and only occasionally maintain attention and concentration, respond appropriately to changes, work in coordination with others, complete a normal workday and workweek, socialize, relate in an emotionally stable manner, and relate predictably in social situations (Tr. 928-929).

However, an opinion from a treating physician is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. *See* 20 C.F.R. Section 416.927(c)(2). The Sixth Circuit "has consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). Hence, even if a medical source has established a treatment relationship with a claimant, that treating physician's opinion does not enjoy a presumption of correctness. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

In this case, the ALJ gave valid reasons for giving Dr. Johnson's opinion little weight (Tr. 228). The ALJ noted that Dr. Johnson's opinion was inconsistent with the record. The ALJ indicated that Dr. Johnson treated Plaintiff during a period when she was not taking psychotropic medications

9

due to her antiviral treatment (Tr. 228). The ALJ also stated that, even without mediation, Plaintiff's treatment records failed to support the severity of the limitations listed in Dr. Johnson's opinion (Tr. 228). Furthermore, the ALJ indicated that Dr. Johnson did not furnish an explanation for his opinion (Tr. 228). *See* 20 C.F.R. Section 404.1527(c)(3). Dr. Johnson simply completed a "check-box questionnaire" without further elaboration. Finally, the ALJ noted that the limitations listed in the opinion were contradicted by Plaintiff's ability to work after her alleged onset date (Tr. 228). Plaintiff explained that her work hours varied based on her availability not because of any mental limitations, and that she stopped because she felt too weak from her hepatitis medication, rather than any mental impairment (Tr. 242, 245). Her ability to work after the alleged onset date contradicts the severity of the limitations included in Dr. Johnson's opinion.

Plaintiff also maintains that Dr. Johnson's opinion is consistent with her treatment history, noting that she sought treatment for depression and adjustment disorder between March 2012 and April 2013 (Pl.'s Br. 11). However, Plaintiff does not offer any explanation as to how these treatment notes would undermine the ALJ's decision. As a matter of fact, the ALJ did consider Plaintiff's treatment history. The ALJ reviewed this evidence, found that Plaintiff had severe mental impairments, and limited Plaintiff to work in low-stress environment without fast paced demands or the need to interact more than superficially (Tr. 218-220).

Plaintiff also argues that the ALJ improperly discounted Dr. Johnson's opinion because she was unable to use psychotropic medication during the period when Dr. Johnson treated her (Pl.'s Br. 12). Plaintiff contends that the ALJ's explanation did not address her functioning during the period when the medication could not be used. However, the ALJ did note that Plaintiff has had more significant symptoms while she was undergoing antiviral treatment for hepatitis C between September 2012 and April 2013 (Tr. 221). The ALJ noted that during this time, Plaintiff had fatigue, malaise,

dizziness, and headaches, as well as increased depressive symptoms because she was not taking psychotropic medication for most of this period (Tr. 221-222, citing Tr. 779, 787, 795, 812, 909). After Plaintiff completed her therapy, she reported no fatigue, weakness, nausea, or vomiting (Tr. 909). Furthermore, her most recent medical records indicate improvement in her depressive symptoms (Tr. 222, 931). The plan was to resume her medication and obtain clearance to restart Seroquel after her antivirals lost their effect (Tr. 932). Hence, the ALJ correctly concluded that Plaintiff's symptoms and related limitations may have been increased when Dr. Johnson offered his opinion. However, the evidence showed that Plaintiff could control her symptoms with medication (Tr. 228).

The ALJ further concluded that Plaintiff's condition, even when she was not on medication, undermined the severity of limitations listed in Dr. Johnson opinion (Tr. 228). Plaintiff disagrees and asserts that "her difficulties and need for treatment continued once medication could be used" (Pl.'s Br. 12). There is nothing in the record that would support her argument. She argues that "the doctor's treatment records support the limitations identified given the Plaintiff's depressed mood, fatigue, poor sleep, poor appetite and racing thoughts" (Pl.'s Br. 12). However, the record fails to support Plaintiff's claim of lasting symptoms that would undermine the ALJ's finding. In August 2012, she presented for a mental health assessment (Tr. 716-721). During the examination, Plaintiff was oriented and cooperative (Tr. 720). Her speech was clear, and she had a logical thought process free of any abnormal ideations (Tr. 720). Her insight and judgment were good, and she had good recent and remote memory (Tr. 720). She also had sustained attention and concentration (Tr. 720). In March 2013, while Plaintiff was receiving antiviral treatment, she was optimistic and eager to return to her normal activities (Tr. 901). She complained of some racing thoughts, but her mood was less depressed, and she had a full range of affect (Tr. 901). Her attention and concentration were sustained, and her memory was within normal limits (Tr. 901). She also reported that her appetite had increased

11

(Tr. 901). By April 2013, Plaintiff did not report fatigue, nausea, or weakness (Tr. 909). She reported continued improvement in sleep and appetite with medication (Tr. 909). On May 30, 2013, Plaintiff recognized that her medication had been helpful and her mental status examination results were normal (Tr. 931). Plaintiff's record shows that she had ongoing symptoms related to her mental impairments, but her condition improved and she consistently had normal mental status examinations. The ALJ correctly found that this evidence did not support Dr. Johnson's opinion.

In addition, the ALJ also explained that Dr. Johnson's opinion was inconsistent with Plaintiff's ability to work after her alleged onset date of disability (Tr. 228). The regulations require that an ALJ must consider six factors – examining relationship, treatment relationship, supportability, consistency, specialization, and other factors – when determining how much weight to give *any* medical opinion, including those of treating sources not given controlling weight, one-time consultative examiners, and non-examining state agency reviewing physicians. *See* 20 C.F.R. Section 404.1527. The regulations make no distinction in the amount of scrutiny that an ALJ must give to a treating source as compared to an examining doctor or a reviewing physician. Each doctor's opinion must be equally scrutinized by the ALJ. *See Gayheart v. Comm'r of Social Security*, 710 F.3d 365, 378-79 (6th Cir. 2013).

Here, the ALJ followed the regulations. The ALJ evaluated Dr. Johnson's opinion and provided valid reasons for why it was not entitled to considerable weight. In addition, the ALJ did not simply reject Dr. Johnson's opinion because it ran contrary to the opinions of the state agency doctors.

Plaintiff also argues that the ALJ erred in evaluating Dr. Halas' opinion. Dr. Halas opined that Plaintiff did not have deficits in understanding, remembering, and carrying out instructions; little to no difficulties in maintaining attention and concentration and maintaining persistence and pace; significant problems in responding appropriately to supervision and coworkers; and some problems

12

responding appropriately to work pressures (Tr. 639). The ALJ gave this opinion moderate weight, but explained that "there is no support in the longitudinal record for his opinion that the claimant would have significant problems in responding appropriately to supervision and coworkers" (Tr. 228). *See* 20 C.F.R. Section 404.1527(c)(4). As a matter of fact, Dr. Halas' own report fails to support his opinion. Dr. Halas noted that Plaintiff graduated high school and completed additional college classes in business administration (Tr. 638). He also noted that she did not have a history of community problems, despite a prior arrest (Tr. 638). Although Plaintiff reported that she has "no fun, hobbies, or recreational activities," she stated that she attended church and spent time with her family (Tr. 638). Dr. Halas does not explain how these findings would translate into "significant" problems in responding to supervisors or coworkers (Tr. 639).

Plaintiff's record, as a whole, fails to show that she had such serious limitations in interacting with others. There is no indication that she had any difficulty with others while working after her alleged onset date of disability. In fact, she testified that she stopped working from her temporary position because she felt weak from the hepatitis and medication, not because of any difficulty dealing with others (Tr. 242, 245). As a matter of fact, Plaintiff completed a questionnaire about her function, and noted that she got along with others, including authority figures, and that she had never been fired from a job because of difficulty getting along with other people (Tr. 441). In addition, the field office interviewer did not observe any difficulties with Plaintiff's ability to talk or respond to questions (Tr. 422). Furthermore, Plaintiff was cooperative during medical appointments (Tr. 629, 720, 931). Hence, the record does not support Dr. Halas' significant limitations on Plaintiff's ability to interact with supervisors or coworkers.

Finally, Plaintiff argues that the ALJ was wrong to reject this portion of Dr. Halas' opinion because it was consistent with Dr. Johnson's opinion (Pl.'s Br. 15). However, the ALJ correctly rejected Dr. Johnson's opinion, and, therefore, was not obligated to accept the severe restrictions listed

in his opinion.  The ALJ correctly determined that the record, as a whole, failed to show that Plaintiff had such severe limitations in interacting with supervisors or the public (Tr. 228).

In conclusion, the ALJ did not commit reversible error in how she weighed the medical opinion evidence.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  The decision of the Administrative Law Judge is supported by substantial evidence, and the ALJ provided good reasons for discounting the opinion provided by Dr. Johnson and a portion of Dr. Halas' opinion.

## VIII.  CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform light work that exists in a significant number of jobs in the national economy, and, therefore, was not disabled.  Hence, she is not entitled to DIB and SSI.

Dated: January 26, 2016                              */s/George J. Limbert*
                                                    GEORGE J. LIMBERT
                                                    UNITED STATES MAGISTRATE JUDGE